### Sarah E. Chiles, Appellee, v. Alton, Granite & St. Louis Traction Company, Appellant.

1. EMINENT DOMAIN—*cause of action for injury.* Since the constitution of 1870 private property cannot be taken or damaged for public use without just compensation. Physical invasion of the property is not necessary but the damages sustained must be such as are not common to other property.

2. EMINENT DOMAIN—*liability for damages resulting from construction of viaduct.* The obstruction of light, air, view and access to property abutting on a street whereby it is injured, is an element of damage not common to other property generally affected, and a street railway company so causing such injury by and through the construction of a viaduct is liable since the constitution of 1870 to compensate the owner.

3. EMINENT DOMAIN—*when admission of evidence as to loss of rents not erroneous.* Held, in an action for injury to real property by and through the construction of a permanent viaduct, where the correct measure of damages is the difference between the fair cash market value before and after the erection of such viaduct, that it was not error to receive evidence of loss of rents resulting from the erection of such viaduct notwithstanding such loss of rents could not be allowed in the award of damages; the instructions in the case, however, clearly restricted the jury in determining the award to the correct measure of damages.

4. EMINENT DOMAIN—*when exclusion of evidence of general depression error.* Where evidence had been received as to the depre-

FOURTH DISTRICT—NOVEMBER, 1910.    509

Chiles v. Alton, Granite & St. Louis Traction Co., 158 Ill. App. 508.

ciation in rents caused by the construction of a viaduct it was held error to exclude evidence of a general business depression in the city resulting in considerable vacant property and in the depreciation of rental values.

5. EMINENT DOMAIN—*what proof of title sufficient.* In an action to recover damages for injury to real property by and through the erection of a viaduct, in the absence of evidence of title, claim or possession in another, evidence upon the part of the plaintiff of possession which had continued for some time under claim of ownership based upon a deed is sufficient.

6. MEASURE OF DAMAGES—*in action for injury to real property.* If real property be injured by and through the construction of a viaduct permanent in character, the correct measure of damages is the difference between the fair cash market value of the property injured before and after the erection of such viaduct.

Action in case. Appeal from the City Court of East St. Louis; the Hon. MORTIMER MILLARD, Judge, presiding. Heard in this court at the March term, 1910. Reversed and remanded. Opinion filed November 12, 1910.

SCHAEFER, FARMER & KRUGER, for appellant.

JAMES G. McHALE and D. J. SULLIVAN, for appellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

The record brings here for review a judgment for the sum of $2,000 damages alleged to have been sustained to the property of appellee by the construction and operation of a viaduct or elevated railway by appellant.

The declaration as amended charged that appellee was the owner of a parcel of ground in the city of East St. Louis abutting on Lake and Collinsville (otherwise known as Ninth street) avenues; that the ground was improved with dwelling houses abutting on the avenues and by a business house on the corner of the property abutting on both avenues; that appellee resided in a portion of the property and that she let the remainder to divers tenants who paid rent therefor.

It was further charged that appellant constructed

510     APPELLATE COURTS OF ILLINOIS.

Chiles v. Alton, Granite & St. Louis Traction Co., 158 Ill. App. 508.

an elevated railway of iron, stone and wood with approaches of embankments in front of the said premises and across said avenues which elevated railway was high above the level of appellee's premises and that certain supports were built near the premises in such way as to hinder access to the premises and to obstruct public travel along said avenues; that appellant operated over its tracks on said railway, electrical passenger and work cars with electrical power, thereby causing a jarring and shaking of the premises, producing noises and casting dust, dirt, cinders and filth thereon, and obstructing the light, air and view; that said obstruction was a permanent one, and that by reason of its construction and operation the buildings and premises were lessened in value and income and greatly damaged. The errors assigned will be considered in the order in which they are presented in appellant's argument.

Many authorities are cited in support of appellant's contention that the elements for which damages were claimed were *damnum absque injuria* and that therefore the court erred in refusing to direct a verdict for appellant.

The testimony of the witnesses introduced by appellee showed that the property alleged to have been injuriously affected was located on the northeast corner of Lake avenue and Ninth street. Lake avenue runs about east and west and Ninth street about northeast. The property had a frontage of about 183 feet on both streets. It was improved by five small cottages located on the eastern portion and by a business house on the western part near the corner and about twelve feet from the building line of Lake avenue, and twenty-five feet from the line of Ninth street.

The appellant is a street railway corporation operating in the city of East St. Louis, and on July 16, 1906, the city by ordinance authorized it to construct a viaduct and operate an electric railway thereon, across

Lake avenue and Ninth street, and to erect the necessary pillars and poles in the streets. By virtue of the power granted, appellant did construct its viaduct over said Lake avenue and Ninth street at their intersection. The viaduct at this point is twenty-five feet high and to support it, appellant erected three steel posts at the northeast corner of the said street intersection in the shape of a tripod, the posts being fifteen feet apart. One post was placed at the northeast corner of the streets made by the intersection; one east of the curb line on Ninth street and one in Lake avenue. The posts were of iron about one foot in diameter and were placed within the curb line of the streets leaving a sidewalk space on Lake avenue of about twenty feet and on Ninth street of about twelve feet.

The testimony produced on the part of appellee tended to show that the erection of the viaduct and the steel supports in close proximity to the property would obstruct the air, light, view and access to the property and thereby damage it; that the corner abutting on Lake avenue and Ninth street while not now improved by a building was suitable and adapted to a building for business purposes; that the supports were so placed as to prevent free access to the corner, or to a building on the corner, and would in a degree affect the light and view to such a building and if the building were of two stories the structure would affect the view from the upper story. Upon a careful reading of all the evidence we are of opinion the structure would so affect access to the property, and the light and view, as materially to lessen its value.

It is further contended, that the structure having been erected by authority of the city council and there being no proof it was negligently constructed or operated, there can be no recovery.

Since the constitution of 1870 private property cannot be taken or damaged for public use without just compensation. Physical invasion of the property is

not necessary but the damages sustained must be such as are not common to other property. Street railways are not only a convenience but a necessity in city transportation and their construction and operation in the public streets must be borne by abutting property owners without compensation unless consequences result in damage to their property which is not common to the public generally. City of Chicago v. Burcky, 158 Ill. 103.

The obstruction of light, air, view and access to property abutting on a street whereby it is injured, is an element of damage not common to other property generally affected, and they come within the protection of the constitutional provision that private property shall not be damaged for public use without just compensation. Kotz v. I. C. R. R. Co., 188 Ill. 578.

"While a city may (as in this case) lawfully grant to an elevated railroad by ordinance the right to construct its railroad in its streets, it is powerless to grant to such company the right to damage the property of the abutting owner, and when the property of an abutting owner is damaged, his right under the constitution to compensation is not confined to a recovery for the tortious acts of the railroad company, but he may recover for an injury to his property which is the result of an act which is perfectly legal." Aldis v. Union El. R. R. Co., 203 Ill. 567; Calumet and Chicago Canal and Dock Co. v. Morawetz, 195 Ill. 398. And this is true whether the railroad is a street railroad or a commercial one. Aldis v. Union Elevated R. R. Co., supra.

The case of Aldrich v. Met. West Side El. Ry. Co., 195 Ill. 456, cited and relied on by appellant, involved entirely different principles. There the railway company had erected its structure upon its own land and having been carefully constructed and operated, was in no sense a nuisance, and the same rules of law applied as would apply to an individual erecting a struc-

ture upon his own land. There could be no recovery for the presence and operation of the road; and as said in the Aldrich case *supra,* the court expressly declined to consider the question of the rights of an abutter where the road was constructed in the street in front of his property.

Without extending a consideration of this question, it is clear from the authorities cited, that an abutting owner on a public street may recover just compensation for damage to his property such as the testimony shows resulted to appellee by the construction and operation of appellant's viaduct, and the court did not err in refusing to direct a verdict for appellant.

Appellee was allowed to prove over the objection of appellant the rental value of the property before and after the erection of the structure. The viaduct was in the nature of a permanent structure and the correct measure of damages was the difference between the fair cash value of the property before and after its erection. It was not sought to recover any loss of rents and the evidence was admitted as a circumstance tending to show a depreciation in the cash value of the property. The jury were limited by the court's instruction to the proper measure of damages, and were told by instruction the only elements of damage they should consider was the obstruction of air, light, view and access. As an element of damage tending to show a reduction in the value of the premises, we think there was no error in admitting the evidence and in view of the instructions on the measure of damages, the jury could not in estimating damages have been misled into allowing any sum for loss of rents. City of Chicago v. Pulcyn, 129 Ill. App. 179.

Appellant offered to prove by cross examination and by its own witnesses a general business depression in the city resulting in considerable vacant property and resulting in a depreciation of rental values, to which the court sustained an objection. This offer was made

to meet the testimony introduced by appellee as to the depreciation in rents caused by the viaduct.

This proposed testimony was proper and admissible and should not have been excluded. As an element of the damages, appellee had shown that the rental value of the property had depreciated after the construction of the viaduct and appellant had the right to show if it could that such depreciation was not wholly due to the structure and to what extent other causes had contributed to affect the rental value. C. B. & Q. R. R. Co. v. McGinnis, 79 Ill. 269. The verdict was for the sum of $2,500 of which $500 was required to be remitted and although appellee's instruction as above stated limited the damages to the difference in the value of the property caused by an obstruction of access, view, light and air, the testimony of rental values was before the jury for consideration and was well calculated materially to enhance the damages. We are of opinion that to exclude the evidence was prejudicial error. R. R. Co. v. McGinnis, *supra.*

The only evidence of title in appellee was the oral testimony of the witness Nordhouse that appellee was in possession of the property when the viaduct was built and had been in possession since 1893 and that she claimed to own the property and to have a deed, and of the testimony of other witnesses that she was in possession. Appellant offered a deed from appellee to Nordhouse conveying the property which was excluded by the court. The admission of the deed would have cured any lack of proof of ownership in appellee, but we are inclined to the opinion that evidence of exclusive possession since 1893 claiming ownership was sufficient to raise the presumption that appellee was the owner for the purpose of this case in the absence of evidence of title, claim or possession in another.

We have examined the instructions refused and given covered by the assignment of errors and as they may upon another trial conform to the views expressed

in this opinion no consideration of them is necessary. The action of the court in permitting the jury to view the premises was not erroneous.

For the error indicated in the exclusion of the evidence offered by appellant upon the question of rental values, we feel the case should be reversed and remanded for another trial.

*Reversed and remanded.*